**Ethel TAYLOR, Plaintiff Below, Appellant,**

v.

**LSI LOGIC CORPORATION, Defendant Below, Appellee.**

**No. 302, 1996.**

Supreme Court of Delaware.

Submitted: Jan. 22, 1997.
Decided: Feb. 24, 1997.
Rehearing Denied: March 27, 1997.

Joseph A. Rosenthal and Kevin Gross of Rosenthal, Monhait, Gross & Goddess, P.A. Wilmington; H. Adam Prussin (argued), and Sidney B. Silverman of Silverman, Harnes & Harnes, New York City; and Berman, De-Valerio, Pease & Tabacco, San Francisco, CA, for Appellant.

R. Franklin Balotti and Robert J. Stearn, Jr. of Richards, Layton & Finger, Wilming-ton; and Dennis J. Block, Stephen A. Radin (argued), and Jonathan M. Leibner of Weil, Gotshal & Manges LLP, New York City, for Appellee.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

In this appeal we consider the legal standards applicable to a motion to dismiss on the ground of forum non conveniens. We hold that the trial court in this case did not apply the proper legal standards in dismissing this action on the ground that a Canadian court would be a "more appropriate forum." The defendant has not established with particularity on this record that it would be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware. This is not one of those rare cases where a plaintiff's choice of forum should be disturbed. Accordingly, we reverse.

### The Facts

Plaintiff below-appellant, Ethel Taylor, a citizen of Toronto, Canada, was at all relevant times a stockholder of LSI Logic of Canada ("LSI Canada"), a Canadian corporation with headquarters in Calgary, Alberta. LSI Canada designed and manufactured customized integrated circuit products. Defendant below-appellee, LSI Logic ("Logic"), is a Delaware corporation headquartered in Milpitas, California. Logic is the majority stockholder of LSI Canada, owning 55% of LSI Canada's outstanding shares immediately before the onset of the events resulting in this controversy.

On November 29, 1994, Logic announced that it intended to take LSI Canada private by buying back all of LSI Canada's publicly-held shares at $3.30 (Canadian) per share. ScotiaMcLeod, an independent investment banking firm retained by the outside directors of LSI Canada to consider the fairness of the price, appraised the shares at a value between $4.80 and $5.60 (Canadian) per share. Logic thereafter decided not to proceed with an offer at that time.

On June 1, 1995, Logic made an offer to purchase the minority's shares for $4.00 (Canadian) per share. At that time, Scotia-McLeod had updated its appraisal to the range of $4.90 to $5.70 (Canadian) per share. In its offer to purchase the minority shares, Logic disclosed the ScotiaMcLeod valuation, but also disclosed a valuation performed by Prudential Securities at Logic's request. Prudential valued the shares at a range between $2.99 and $3.37 (Canadian) per share. Prudential regularly acts as underwriter for Logic's security offerings in the United States and provides financial advisory services to Logic. Logic does not represent that Prudential's valuation is independent.

Logic's offer also stated that, after the shares had been purchased, Logic would eliminate all of LSI Canada's independent design and manufacturing functions and would significantly increase the transfer prices it charges LSI Canada for computer systems and other products, effectively transforming LSI Canada from an independent design and manufacturing operation into a Canadian distributor of Logic's products.

LSI Canada's outside directors did not approve of the offer price, concluding that it did not reflect the fair market value of the shares, but recommended that the stockholders accept the offer before further erosion of share value resulted from the increase in transfer prices and the transformation of LSI Canada into a distribution center. On this advice, 10.1 out of 11.8 million shares were tendered. On September 8, 1995, LSI Canada, at Logic's behest, implemented a reverse stock split that had the effect of cashing out the rest of the public's shares at the same $4.00 (Canadian) per share price.

Plaintiff brought an action in the Delaware Court of Chancery, requesting a preliminary injunction against Logic, enjoining it from acquiring the public minority interest of LSI Canada pursuant to the June 1, 1995 offer and from implementing any plan to change current transfer pricing policies or otherwise undermining LSI Canada's profitability. The Court of Chancery refused to issue an injunction.

Logic then moved to dismiss the action based on the doctrine of forum non conveniens. There is no substantially identical companion litigation pending in Canada.[1] The Court of Chancery granted Logic's motion.[2] This is plaintiff's appeal of the decision of the Court of Chancery.

### Principles of Delaware Law Applicable to a Forum Non Conveniens Motion

The Court of Chancery based its decision upon its determination that Canada would be a "more appropriate forum" for this litigation. It may well be that Canada is the more appropriate forum, but Logic failed to demonstrate adequately how plaintiff's choice of forum results in an overwhelming hardship to it.

██ Delaware courts consistently uphold a plaintiff's choice of forum except in rare cases.[3] When deciding motions to dismiss on the ground of forum non conveniens, Delaware courts abide by the *Cryo–Maid*[4] factors to guide those decisions. This Court, in *Cryo–Maid* and its progeny, has held that the following matters should be considered:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more

---

1. Another action raising the claims asserted here was later filed in California by a different stockholder of LSI Canada and was stayed by agreement pending resolution of this action. There is also an appraisal proceeding pending in Canada.

2. *Taylor v. LSI Logic Corp.* Del.Ch., C.A. No. 13915, slip op., 1996 WL 361505 (June 21, 1996).

3. *Chrysler First Business Credit Corp. v. 1500 Locust Limited Partnership,* Del.Supr., 669 A.2d 104, 105 (1995); *ANR Pipeline Co. v. Shell Oil Co.,* Del.Supr., 525 A.2d 991, 992 (1987). *See also States Marine Lines v. Domingo,* Del.Supr., 269 A.2d 223, 225 (1970).

4. *General Foods Corp. v. Cryo–Maid, Inc.,* Del. Supr., 198 A.2d 681 (1964).

properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.

We held in *Parvin v. Kaufmann,*[5] and reinforced recently in *Chrysler First,*[6] that defendants moving to dismiss a first-filed suit on the ground of forum non conveniens must establish with particularity that they will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware. An action may not be dismissed upon bare allegations of inconvenience without a particularized showing of the hardships relied upon. "To do otherwise would put ... 'a powerful weapon into the hands of corporations alleged to have improperly conducted their affairs.'"[7] Moreover, judicial discretion is to be exercised sparingly where, as here, there is no prior action pending elsewhere.[8]

This Court in *Chrysler First* stated that the *Cryo–Maid* factors listed above

provide the framework for an analysis of hardship and inconvenience. They do not, of themselves, establish anything. Thus, it does not matter whether only one of the *Cryo–Maid* factors favors defendant or all of them do. The issue is whether any or all of the *Cryo–Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware. Absent such a showing, plaintiff's choice of forum must be respected.[9]

### Court of Chancery's Analysis

The Court of Chancery analyzed each of the factors relevant to this case.

First, since plaintiff conceded that Canadian law governs the substantive issues in this case, the Court of Chancery found that the choice of law factor weighed in favor of Logic's motion to dismiss this action brought in Delaware.

Second, regarding the relative ease of access to sources of proof, the Court of Chancery pointed out that none of the sources is located in Delaware. All are either in Canada or in California or both. Logic failed to identify any witnesses it intended to call at trial or to demonstrate that any of them would suffer overwhelming hardship if this action is litigated in Delaware. Accordingly, the Court of Chancery concluded that there was no clear advantage nor clear disadvantage in access to evidence by litigating in any one of the three jurisdictions competent to hear this matter.

Third, the Court of Chancery found that the availability of compulsory process for procuring the testimony of witnesses weighed in favor of Logic because Canadian courts would find it easier to serve process on the necessary witnesses in Canada. The Court of Chancery did not speak to the identical difficulties faced by Canadian courts serving process on the necessary witnesses in California, however. We hold that these mirror-image difficulties cancel out each other. Accordingly, as to service of process, there is no clear advantage nor clear disadvantage to litigating in Canada, Delaware or California.

Fourth, the Court of Chancery noted that there is a later-filed action pending in California involving the same subject matter and the same parties. That action has been stayed awaiting disposition of this case. Without commenting on the weight of this factor, the Court of Chancery determined that, although there is no action pending in a

---

5. *Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967).

6. *Chrysler First,* 669 A.2d at 107.

7. *Parvin,* 236 A.2d at 428 (quoting *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 537–38, 67 S.Ct. 828, 838, 91 L.Ed. 1067 (1947) (Reed, J., dissenting)). *Cf. Piper Aircraft v. Reyno,* 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981) (stating that it is not necessary for defendants to describe with specificity the evidence they would not be able to obtain if trial were held in the United States).

8. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.,* Del.Supr., 263 A.2d 281, 283 n. 2 (1970).

9. *Chrysler First,* 669 A.2d at 108.

Canadian court, Canada would be the more appropriate forum for this suit since Canadian courts are better positioned to interpret Canada's laws governing the internal affairs of its corporations.

Returning to the significance of the stayed California action, we find that this factor carries little weight in the analysis because the California action was filed later than the action at issue in this appeal, involves a different stockholder-plaintiff and because both actions are in their preliminary stages.

Finally, the Court of Chancery found that other practical considerations weighed in favor of Logic's motion to dismiss. It noted that plaintiff is a Canadian citizen [10] with shares in a Canadian corporation governed by Canadian law. The Court stated that Delaware has no interest in resolving a dispute between a minority stockholder of a foreign corporation and the majority stockholder, which happens to be a Delaware corporation, especially in light of the fact that none of the complained-of activity occurred in Delaware.

The Court of Chancery concluded its analysis with a determination that Canada's courts have a greater interest in the outcome of this case than the Delaware courts, and that the courts of Canada should resolve the application of Canadian laws to a Canadian corporation and its investors. This may be true. Yet Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware. We conclude, therefore, that these factors alone are not sufficient to warrant interference with the plaintiff's choice of forum.[11]

It is not unusual for courts to wrestle with open questions of the law of sister states or foreign countries.[12] The application of foreign law is not sufficient reason to warrant dismissal under the doctrine of forum non conveniens.[13]

### Other Practical Considerations

One practical consideration is plaintiff's argument that she may be subject to the English "loser pays" rule if forced to litigate in Canada.[14] As plaintiff stated in her opening brief in this Court, "[T]he threat of a devastating cost award is the single greatest obstacle to the prosecution of stockholder class actions in Canada." This Court in *Parvin* found of prime importance in plaintiff's favor the fact that plaintiff's non-Delaware fora required the deposit of security from a stockholder suing derivatively, and Delaware has no such requirement.[15] The fee factor, like

---

**10.** Plaintiff is a citizen of Toronto, Canada. Defendant argues that this fact supports the trial court's decision. Conceivably, this could be a factor in a proper case. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981) (holding that the ordinarily strong presumption in favor of the plaintiff's choice of forum applies with less force when the plaintiff or real parties in interest are foreign). Here, however, it is not a persuasive factor.

**11.** *Kolber v. Holyoke Shares, Inc.*, Del.Supr., 213 A.2d 444, 446 (1965).

**12.** *See Draper v. Gardner Defined Plan Trust*, Del. Supr., 625 A.2d 859, 868 (1993) (California courts competent to decide Delaware corporate law); *see also Monsanto Co. v. C.E. Health Comp. & Liability*, Del.Supr., 652 A.2d 30 (1994) (where this Court interpreted Missouri contract law to determine insurance coverage issues).

**13.** *Kolber*, 213 A.2d at 446. Moreover, the Delaware Rules of Evidence contemplate that Delaware courts may be called upon to construe the law of a foreign country. The applicable rule provides the following procedures to govern the determination of such issues in our courts:

> **(e) Notice, information, ruling on laws of foreign country.** A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under these rules. The court's determination shall be treated as a ruling on a question of law.

D.R.E. 202(e).

**14.** The sole reference by the Court of Chancery to Canada's rules about attorneys' fees is that: "Canada courts have broad statutory authority to address the alleged oppression of minority shareholders. One critical element seems to be missing—Canada law does not recognize the broad range of discretion granted to Delaware courts to award attorneys' fees." *Taylor v. LSI Logic Corp.* Del.Ch., C.A. No. 13915, slip op. at 10, 1996 WL 361505 (June 21, 1996).

**15.** *Parvin*, 236 A.2d at 427.

the security deposit factor in *Parvin*, should not, standing alone, be determinative. It is an interesting question whether the "loser pays" rule, applicable under Canadian law, or Delaware law would govern the issue of attorney's fees should this action go forward in Delaware. We do not consider it here because we reach no determination that the Delaware law on fees would necessarily apply. This issue is not before us at this time, and it may never come before us.

■ As an additional practical consideration, plaintiff argues that the rules of discovery are more restrictive in Canada than in Delaware. For example, Canadian law requires that discovery from third parties, such as Prudential Securities or LSI Canada, requires leave from the court, which can be granted only on motion demonstrating that the documents sought are "relevant to a material issue in the action and that 'it would be unfair to require the moving party to proceed to trial without having discovery of the document.' "[16] This difference in discovery rules would be proper for a trial court to consider

in a forum non conveniens motion, and weighs somewhat in plaintiff's favor.

The Court of Chancery did not predicate its decision upon the inherent power of a trial court to control its own docket, manage its affairs, achieve the orderly disposition of its business and promote the efficient administration of justice.[17] We do not decide this question, but we note that nothing we decide herein is intended to preclude such an argument from being made in a proper case.[18]

### Conclusion

We reverse the decision of the Court of Chancery and remand the matter for further proceedings consistent with this opinion.

16. Ont.R.Civ.P. 30.10.

17. *State v. Harris*, Del.Supr., 616 A.2d 288, 291 (1992) (quoting *Gebhart v. Ernest DiSabatino & Sons, Inc.*, Del.Supr., 264 A.2d 157, 159 (1970)).

18. It is conceivable that this comparative analysis may be relevant in a proper case where there is an evidentiary record supporting the burden on the Delaware court and litigants compared to more expeditious and less burdensome litigation in another forum. *But see* Del. Const., art. I, § 9 ("All courts shall be open").